**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JOHANNES ASSEN, D/B/A/ JOHANNES
ASSEN FARMS,

    Plaintiff,

    v.                                       **Case No. 2:15-cv-2892**

                                                    **Magistrate Judge Elizabeth P. Deavers**

**BRIAN D. JONES,** *et al.*,

    Defendants.

## OPINION AND ORDER

Plaintiff, Johannes Assen ("Assen"), brought this action against Defendants, Brian D. Jones ("Jones") and Levi D. Wilson ("Wilson"), alleging claims arising under the Packers and Stockyards Act, 7 U.S.C.A. §181 *et seq.*, as well as several state-law claims. This matter is before the Court for consideration of Jones' Motion to Dismiss (ECF No. 18), Assen's Motion for Default Judgment (ECF No. 31) and Motion for Summary Judgment (ECF No. 33), Wilson's Motion for Order to Grant Motion for Default Judgment (ECF No. 39), and the Court's June 22, 2016 Show Cause Order (ECF No. 43). For the reasons that follow, Plaintiff's Motion for Default Judgment is **GRANTED IN PART AND DENIED IN PART,** Defendant Wilson's Motion for Default Judgment is **GRANTED**, and Defendant Jones' Motion to Dismiss and Plaintiff's Motion for Summary Judgment are **DENIED AS MOOT**.

**I.**

Plaintiff Assen filed the instant action in October 2015. According to Assen's Complaint, he and Defendants Jones and Wilson are all in the business of buying and selling cattle. Assen both bought cattle from and sold cattle to Jones in the Spring of 2015.

Between August 1, 2015, and August 18, 2015, Assen sold and delivered $269,165 worth of cattle to Wilson ("First Set of Cattle"). Wilson, in turn, sold and delivered the First Set of Cattle to Jones for $288,000. Jones, however, failed to pay Wilson for the First Set of Cattle. Citing his failure to receive payment from Jones, Wilson failed to pay Assen for the First Set of Cattle. Jones offered a variety of excuses for his failure to pay, all of which he knew not to be true, in order to induce Assen and Wilson to continue to do business with him. Between August 18, 2015, and September 5, 2015, Assen sold and delivered $238,620 worth of cattle to Jones ("Second Set of Cattle"). Jones wrote five checks totaling $238,620 to evidence his obligation to pay, but both Assen and Jones agreed that the checks would not be cashed and that instead the money owed would be sent by wire transfer or cashier's check.

On September 5, 2015, Assen and Jones met at a bank in Kentucky. Jones signed a promissory note in which he stated that he would wire the $288,000 he owed to Wilson as payment for the First Set of Cattle on or before September 15, 2015 ("First Promissory Note"). He also signed another promissory note in which he stated that he would wire $228,620 to Assen ("Second Promissory Note"). Assen alleges that this amount was a typographical error and that the correct amount was $238,620 as evidenced by the checks Jones had written him.

Between September 11, 2015, and September 13, 2015, Assen sold and delivered two additional loads of cattle to Jones ("Third Set of Cattle"). Jones agreed to pay Assen $87,755 for

2

the Third Set of Cattle and wrote two checks totaling $87,755 to evidence this obligation.  Both Assen and Jones agreed that the checks would not be cashed and that the Third Set of Cattle would be paid by wire transfer or cashier's check.

Jones failed to make payment on either of the promissory notes and also failed to pay for the Third Set of Cattle.

On October 9, 2016, Assen filed this action asserting state-law claims for breach of contract, unjust enrichment, promissory estoppel and conversion, as well as federal claims under the Packers and Stockyards Act against Wilson and Jones.  Assen also advanced a state-law fraud claim against Jones.  Assen seeks "in excess of $595,540" in compensatory damages, punitive damages, reformation of the Second Promissory Note to reflect the understanding of the parties, costs and expenses, and pre- and post-judgment interest.

On December 30, 2015, Wilson filed his Answer to Plaintiff's Complaint and Cross-Claim Against Jones.  (ECF No. 16.)  In his Answer, Wilson admitted that he owes Assen $269,165, "subject to a set-off/credit for mileage/hauling for 1,075 miles at the rate of $2.50/mile, for a total charge of $2,687.50."  (Wilson Answer ¶ 3, ECF No. 16.)  In his Cross-claim, Wilson asserts a single state-law breach-of-contract claim against Jones, alleging that Jones paid him only $18,835.00 of the $288,000.00 owed for the First Set of Cattle.  He therefore seeks judgment in the amount of $269,165.00 plus reasonable attorney's fees and costs.

On January 19, 2016, Defendant Jones, represented by counsel, filed a Motion to Dismiss (ECF No. 18), seeking dismissal of Plaintiff's Complaint, citing improper venue and failure to state a claim with regards to the claims premised upon the First Set of Cattle and First Promissory Note.

3

Jones failed, however, to respond to Wilson's Cross-Claim, prompting Wilson to apply for an entry of default. (ECF No. 26.) The Clerk entered default (ECF No. 28), and on March 3, 2016, Wilson moved for Default Judgment against Jones, seeking judgment in the amount of $269,165. (ECF No. 31.) Wilson supported his Motion for Default Judgment with his affidavit and a fully-executed promissory note. (ECF No. 31-1.) Jones' counsel moved to withdraw as counsel, citing Jones "persistent failure . . . to maintain contact" with his counsel. (ECF Nos. 29 and 32.) Jones did not respond to Wilson's Motion for Default Judgment.

On April 11, 2016, Assen filed a Motion for Summary Judgment on his claims against Jones. (ECF No. 33.) In the Motion for Summary Judgment, Assen represents that Jones failed to respond to any of his discovery requests. He requests compensatory damages in the amount of $595,540, the statutory maximum of $350,000 in punitive damages, and $20,595.58 in attorney's fees and expenses. To date, Jones has not filed a response to Assen's Motion for Summary Judgment.

On April 29, 2016, the Court issued a Notice of Hearing, scheduling a conference for May 10, 2016. (ECF No. 35.) In a May 2, 2016 Order, the Court advised Jones that "he must appear in person or through counsel at the May 10, 2016 status conference" and that "failure to appear could result in sanctions, including the sanction of entry of default judgment." (ECF No. 36.) On May 9, 2016, Jones contacted the Court via telephone and asked for the hearing to be continued. The Court accommodated Jones' request, moving the conference to June 1, 2016. (ECF No. 38.) At Jones' request, the Court again rescheduled the hearing for June 14, 2016. (ECF No. 40.) When Jones failed to appear for the twice-rescheduled conference, the Court issued a Show Cause Order, requiring Jones to show cause within fourteen days why the Court

4

should not sanction him for failing to appear at the conference. (ECF No. 43.) The Court advised Jones that "failure to timely respond to this Show Cause Order, together with an affidavit, will result in the sanction of an entry of default for failure to prosecute." (*Id*.) To date, Jones has failed to respond to the Court's Show Cause Order.

## II.

**A.     Jones' Violation of Court Orders**

The Court finds that Jones' repeated willful violation of this Court's Orders warrants the sanction of entry of default judgment. Federal Rule of Civil Procedure 16(f) provides that a Court may "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party . . . fails to appear at a . . . pretrial conference" or "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). Federal Rule of Civil Procedure 37(b)(2)(A) identifies entry of "a default judgment against the disobedient party" as a permissible sanction. Fed. R. Civ. P. 37(b)(2)(A)(vi); *see also In re Leonard*, 644 F. App'x 612, 618 (6th Cir. 2016) (affirming trial court's sanction of default judgment where the defendants had willfully failed to comply with pretrial orders); *Dell, Inc. v. Advicon Computer Servs., Inc*., No. 06–11224, 2007 WL 2021842, at *5 (E.D. Mich. July 12, 2007) ("[I]t is well-established that a federal court has the inherent authority to . . . enter default judgment . . . based on a party's failure to obey court orders in general . . . when the circumstances warrant as much."), *aff'd Dell, Inc. v. Elles*, No. 07–2082, 2008 WL 4613978 (6th Cir. June 10, 2008). Moreover, this Court "has the inherent power to 'protect[ ] the due and orderly administration of justice and . . . maintain[ ] the authority and dignity of the court . . . .'" *Bowles v. City of Cleveland*, 129 F. App'x 239, 241 (6th Cir. 2005) (quoting *Cooke v. United States*, 267 U.S. 517, 539 (1925) (alternations in the original)).

5

The United States Court of Appeals for the Sixth Circuit has outlined four factors to consider in deciding whether to issue the harsh sanction of default:

> "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered."

*Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (quoting *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (internal quotation marks and citation omitted)). "'Although typically none of the factors is outcome dispositive, . . . a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct.'" *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting *Knoll v. AT & T*, 176 F.3d 359, 363 (6th Cir. 1999)).

Here, despite Jones' repeated requests to move the hearing, which the Court accommodated, he failed to appear notwithstanding the Court's admonition that "failure to appear could result in sanctions, including the sanction of entry of default judgment," (ECF No. 36). Jones then failed to respond to this Court's Show Cause Order in which he was again advised that "failure to timely respond . . . will result in the sanction of an entry of default for failure to prosecute," (ECF No. 43). *Cf. Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 615 (6th Cir. 1998) (noting that "[p]rior notice, or lack thereof, is . . . a key consideration" in whether the sanction of dismissal is appropriate). The Court concludes that Jones' willful failure to comply with these clear Orders of the Court constitutes bad faith or contumacious conduct. *See Steward v. Cty. of Jackson, Tenn.*, 8 F. App'x 294, 296 (6th Cir. 2001) (concluding that a plaintiff's failure to comply with a court's order "constitute[d] bad faith or contumacious conduct and justifie[d] dismissal").

6

Because Jones has missed deadlines and disregarded Court orders, the Court concludes that no alternative sanction would protect the Court's authority and the integrity of the pretrial process. Accordingly, the Court finds that Plaintiff Assan and Cross-Claim Plaintiff Wilson are entitled to entry of default judgment against Jones.

**B.      Default Judgment Against Jones**

As a party in default, Jones is deemed to have admitted all of the well-pleaded allegations in Assen's and Wilson's Complaints. *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Const. v. U.S. Fid. and Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *cf.* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *LaSalle Bank Nat'l Ass'n v. Appleton*, No. 1:07-CV-175, 2007 WL 2344708, at *2 (S.D. Ohio Aug. 15, 2007) ("Once the default has been entered, the well-pleaded facts of the complaint relating to liability must be accepted as true.").

Thus, "the Court accepts as true the well-pled factual allegations of [the] complaint, draws reasonable inferences from those allegations in [the plaintiff's] favor, and then asks whether [the plaintiff] has stated a claim upon which relief may be granted." *Ayers v. Receivables Performance Mgmt., L.L.C.*, No. 2:15-CV-12082, 2016 WL 5402962, at *3 (E.D. Mich. Sept. 28, 2016) (citing *Gen. Conf. Corp. v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010)). Once the Court determines that Plaintiff has stated a claim, "it will determine the amount and character of the recovery that should be awarded." 10A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2685 (3d ed.). Because allegations with respect to the amount and character of damages are not taken as true, they must be supported by factual evidence. If, therefore, the

7

factual evidence provided in the complaint is insufficient to establish a claim for a sum certain, the judgment must be entered by the court, and additional hearings may be held to determine those facts.  Fed. R. Civ. P. 55(b)(2); *Ayers*, 2016 WL 5402962, at *3 (evidentiary hearing not necessary "if sufficient evidence is submitted to support the request for damages or if the amount claimed is one capable of ascertainment from definite figures in the documentary evidence or affidavits" (internal quotation marks and citation omitted)).

### 1. Wilson's Complaint

The Court finds that Wilson has sufficiently alleged a breach of contract claim against Jones arising from the sale of the First Set of Cattle.  Wilson has also sufficiently supplied factual evidence reflecting that he was damaged in the amount of $269,165.  The Court declines to award attorney's fees, however.  Ohio courts recognize the "American Rule," which "does not permit the prevailing party to recover attorney fees, in the absence of statutory authorization, as part of the costs in the litigation."  *Sorin v. Bd. of Educ. of Warrensville Heights Sch. Dist.*, 46 Ohio St.2d 177, 179 (1976); *City of Gahanna v. Eastgate Props. Inc.*, 36 Ohio St.3d 65, 66 (1988) ("Generally, a prevailing party may not recover attorney fees as costs of litigation in the absence of statutory authority unless the breaching party has acted in bad faith, vexatiously, wantonly, obdurately or for oppressive reasons."); *Pace Airlines v. Prof. Settlement Servs., LLC*, No. 5:08-cv-0771, 2010 WL 4818422, at *2 (N.D. Ohio Nov. 19, 2010) ("[T]he case law is clear: absent a statute allowing for attorneys' fees as costs, they may be awarded as compensatory damages only where punitive damages have been awarded.").  Wilson has not identified a statute that would permit recovery of attorney's fees; nor has he alleged that Jones acted vexatiously. *See Staffilino Chevrolet, Inc. v. Balk*, 813 N.E.2d 940, 940 (Ohio 2004) ("[T]he appellant in that

case never alleged bad faith, so [attorney's] fees could not be recovered under the bad-faith exception."). The Court therefore declines to award attorney's fees.

In sum, Wilson is entitled to judgment against Jones in the amount of $269,165, plus costs and interest according to law from the date of judgment.

### 2. Assen's Complaint

The Court concludes that Assen has sufficiently alleged a breach of contract claim against Jones arising from the sale of the Second and Third Sets of Cattle (Counts Two and Three of his Complaint). The Court also concludes that Assen has sufficiently alleged facts and offered factual evidence supporting his request for reformation of the Second Promissory Note to reflect that Jones was obligated to pay $238,620 in connection with the sale of the Second Set of Cattle. The Court further finds that Assen has sufficiently alleged fraud claims against Jones relating to the sale of the Third Set of Cattle.

Based upon Assen's allegations and factual evidence he submitted, the Court concludes that he is entitled to compensatory damages in the amount of $326,375 ($238,620 for the Second Set of Cattle plus $87,755 for the Third Set of Cattle). The Court further finds that Assen is entitled to an additional $87,755 in punitive damages, an amount equal to the actual damages Assen suffered in connection with the Third Set of Cattle, which the Court determines is sufficient to punish Jones and deter others from engaging in similar behavior. *See Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 183 (1975) ("It is an established principle of law in this state that punitive damages may be awarded in tort cases involving fraud, insult or malice." (citations omitted); *see also Arbino v. Johnson & Johnson*, 880 N.E.2d 420, 441 (Ohio 1994) ("'The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct.'")

(quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 635 N.E.2d 331 (Ohio 1994)).

Because the Court finds that punitive damages are warranted, Assen may also recover attorney's fees as an element of his compensatory damages. *Columbus Fin., Inc*, 42 Ohio St.2d at 183 ("If punitive damages are proper, the aggrieved party may also recover reasonable attorney fees." (citations omitted); *Ohio Vestibular & Balance Ctrs., Inc. v. Wheeler*, 999 N.E.2d 241, 256 (Ohio 2013) (noting that "punitive damages are a prerequisite to awarding attorney fees"). Assen has provided sufficient documentation reflecting that he has incurred $20,595.58 in attorney's fees and expenses prosecuting this action. The Court therefore awards $20,595.58 in attorney's fees and expenses, bringing the total amount of compensatory damages to $346,970.58 ($326,375 in actual damages plus $20,595.58 in attorney's fees and expenses).

Assen's remaining claims arising from the sale of the Second and Third Sets of Cattle are pled in the alternative and seek the same compensatory damages the Court already awarded in connection with his breach-of-contract and fraud claims. Because Plaintiff may not recover twice on different theories for the same conduct, the Court need not separately analyze the remaining claims. *See Orum Stair, LLC v. GJJG Ents., LLC*, No. 15AP-507, --- N.E.3d ----, 2016 WL 5625257, at *9 (Ohio App. 10th Dist. Sept. 29, 2016 (affirming trial Court's application of the general principle "a plaintiff is entitled to only a single recovery of damages even though such plaintiff may be entitled to plead alternative theories of recovery" (citations omitted)); *Rakich v. Anthem Blue Cross & Blue Shield*, 875 N.E.2d 993, 996 (Ohio 2007) ("[I]n a tort action, the measure of damages is that which will make the injured party whole." (citations omitted)); *Medpace, Inc. v. Biothera, Inc.*, No. 1:12-cv-179, 2013 WL 1386298, at *4 (S.D. Ohio Apr. 4, 2013) ("Ohio courts have explicitly and repeatedly applied the rule against double recovery for

10

both breach of contract and for intertwined tort claims to bar conversion claims altogether." (citing *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 437 F. App'x 381, 385 (6th Cir. 2011)).

Finally, the Court concludes that Plaintiff has failed to state a breach-of-contract claim against Jones premised upon the sale of the First Set of Cattle.   In Count Four of his Complaint, Plaintiff alleges that Jones agreed to pay Wilson $288,000 for the First Set of Cattle and that Wilson, in turn, was obligated to pay him $269,165 for those same cattle.   (Compl. ¶ 53, ECF No. 1.)   Assen further alleges that he (and not Wilson) was present for Jones' execution of the First Promissory Note.   Assen concludes that the First Promissory Note was "intended to benefit [him]" and that he is therefore a third-party beneficiary of the First Promissory Note.   (*Id*. at ¶ 54.)

In Ohio, only party to the contract or an intended third-party beneficiary (as contrasted with incidental third-party beneficiaries) may sue on what it perceives to be a breach of contract. *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161 (1991) (citing *Visintine & Co. v. New York, Chicago, & St. Louis RR. Co*., 169 Ohio St. 505 (1959)).   In defining the law with respect to incidental and intended beneficiaries, the Ohio Supreme Court has adopted Section 302 of the Restatement of the Law of Contracts:

> We adopt the statement of law with respect to intended and incidental beneficiaries found in Section 302 of the Restatement of the Law 2d, Contracts (1981) 439-440. Section 302 states:
>
>> "(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>>
>> (a)     the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

11

>   (b)   the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."

> Comment *e* to Section 302 states: "Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created. * * * "

*Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40 (1988) (quoting Section 302 of the Restatement of the Law 2d, Contracts (1981) 439–40)). The Ohio Supreme Court went on to adopt the "intent to benefit" test articulated by the United States Court of Appeals for the Sixth Circuit:

> In *Norfolk & Western Co. v. United States* (C.A.6, 1980), 641 F.2d 1201, 1208, the United States Court of Appeals for the Sixth Circuit, applying Ohio law, explained the "intent to benefit" test, a test used to determine whether a third party is an intended or incidental beneficiary:
>
>> "Under this analysis, if the promisee * * * intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary,' who has no enforceable rights under the contract.
>>
>> * * * [T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary."

*Id.* (quoting *Norfolk*, 641 F.2d at 1208).

Applying the foregoing tests to the instant case and accepting the well-pled allegations as true, the Court finds that Assen has failed to allege facts sufficient to demonstrate that he was an intended beneficiary with respect to the contract between Jones and Wilson for the First Sale of

12

Cattle. As a threshold matter, the Court notes that it need not accept Assen's legal conclusion that he is an intended third-party beneficiary. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (courts not bound to accept legal conclusions pled as factual allegations). Second, Jones' payment to Wilson of the amount owed under the First Promissory Note would not satisfy Wilson's obligation to pay Jones for the First Set of Cattle. Thus, Subsection (1)(b) of Section 302 of Restatement of the Law of Contracts is not satisfied. Third, the Court concludes that Subsection (1)(a) of Section 302 is not satisfied. To begin, the First Promissory Note, which Jones executed on September 5, 2015, evidences a promise to pay Wilson only and explicitly states that "[i]f the balance is not paid in full by the last date listed above, *Levi D. Wilson* can then take this agreement into a form of legal action in a court system against Brian D. Jones." (First Promissory Note, ECF No. 1-2 (emphasis added).) Significantly, the First Promissory Note fails to even mention Assen. In addition, Wilson does not concede that Assen was an intended third party beneficiary with respect to his contract with Jones for the First Set of Cattle. (*See* Wilson Answer ¶ 2, ECF No. 16.) Finally, although Wilson concedes that he owes Assen money relating to his purchase of the First Set of Cattle, he disputes the amount he owes. (*See id*. at ¶ 3.) Based upon the foregoing, the Court concludes that Assen has failed to sufficiently establish that he is an intended third-party beneficiary of the contract between Wilson and Jones. Assen therefore cannot sustain a breach-of-contract claim against Jones with respect to the First Set of Cattle. Instead, Assen's recourse for any monies owed with respect to the First Set of Cattle is to pursue his breach-of-contract claim against Wilson, with whom he is in privity of contract.

In sum, Assen is entitled to judgment against Jones in the amount of $434,725.58 ($346,970.58 in compensatory damages plus $87,755 in punitive damages), plus costs and interest

according to law from the date of judgment.

**C.      Other Pending Motions and Remaining Claims**

The foregoing findings and conclusions render Jones' Motion to Dismiss (ECF No. 18) and Assen's Motion for Summary Judgment (ECF No. 33) **MOOT**. Assen's claims against Wilson remain pending. Although Assen concedes that he owes Plaintiff money for his purchase of the First Set of Cattle, he disputes the amount owed. (*See* Wilson's Answer ¶ 3, ECF No. 16.) Thus, there remains a dispute of fact regarding the amount owed that prevents the Court from resolving Assen's claims against Wilson.

### III.

For the reasons set forth above, Assen's Motion for Default Judgment (ECF No. 31) is **GRANTED IN PART AND DENIED IN PART**, Wilson's Motion for Default Judgment (ECF No. 39) is **GRANTED**, and Jones' Motion to Dismiss (ECF No. 18) and Assen's Motion for Summary Judgment (ECF No. 33) are **DENIED AS MOOT**.

The Clerk is **DIRECTED** to enter judgment (1) against Jones and in Wilson's favor in the amount of **$269,165**, plus costs and interest according to law from the date of judgment; and (2) against Jones and Assen's favor in the amount of **$434,725.58** ($346,970.58 in compensatory damages plus $87,755 in punitive damages), plus costs and interest according to law from the date of judgment. Assen's claim against Wilson remains pending. The Court will convene the parties for a status conference by separate notice.

**IT IS SO ORDERED.**

Date:   January 4, 2017                           */s/ Elizabeth A. Preston Deavers*
                                                 **ELIZABETH A. PRESTON DEAVERS**
                                                 **UNITED STATES MAGISTRATE JUDGE**